[17 NYS3d 678]

THEODORE F. SCHROEDER et al., Appellants-Respondents, v PIN-TEREST INC., Respondent, and BRIAN S. COHEN et al., Respondents-Appellants.

First Department, October 6, 2015

*See Schroeder v Pinterest Inc.*, 2014 NY Slip Op 31809(U).

14

### APPEARANCES OF COUNSEL

*Montgomery McCracken Walker & Rhoads, LLP*, New York City (*Sidney S. Liebesman, Richard L. Scheff, Charles Palella* and *Steven Pachman* of counsel), for appellants-respondents.

*Jenner & Block LLP*, New York City (*Brian J. Fischer, Andrew H. Bart* and *Alison I. Stein* of counsel), for respondents-appellants.

*Quinn Emanuel Urquhart & Sullivan, LLP*, New York City (*William B. Adams, Michael B. Carlinsky* and *Benjamin J. Gildin* of counsel), for respondent.

### OPINION OF THE COURT

RICHTER, J.

In this action, plaintiff Theodore F. Schroeder and two companies founded by him, plaintiffs Rendezvoo LLC (Rendezvoo) and Skoop Media Associates, Inc. (Skoop Media), allege that defendants Brian S. Cohen, New York Angels, Inc. (NY Angels), and Pinterest Inc. (Pinterest) stole and illegally used Schroeder's confidential ideas, technology and business plans in developing the popular website, Pinterest.com. According to plaintiffs, Schroeder conceived of a novel web application that would allow Internet users to share information about themselves by posting interests, ideas and pictures to their interface boards, a concept very different from then-existing popular social network sites like Facebook, MySpace and Friendster.

Schroeder and two friends embarked on the project and later invited Cohen, an investor and self-proclaimed "entrepreneurial mentor," to join the group. Plaintiffs allege that after learning all about Schroeder's ideas, technology and business plans, Cohen absconded with them, and gave them to Pinterest, which then used the information to develop its own highly-successful website. After subsequently learning that Cohen played a material role in the early stages of the Pinterest website, plaintiffs brought this action for, inter alia, breach of fiduciary duty, misappropriation and unjust enrichment.

The facts alleged in the complaint are as follows. In 2005, while attending Columbia Law School, Schroeder and a law school classmate, nonparty Brandon Stroy, developed an idea for a social network bulletin board where users could share their physical locations with their friends over the Internet. According to plaintiffs, no such website existed at the time. Lacking technological expertise, Schroeder taught himself computer programming, and spent more than 2,000 hours

learning the necessary programming skills to develop the idea into a web application. Another law school classmate, nonparty William Bocra, came on board to further develop the idea and prepare a business model for the project.

Eventually, the three entrepreneurs formalized the project by forming Rendezvoo, a limited liability company in which Schroeder held a 65% interest, with Stroy and Bocra each holding a 17.5% interest. Schroeder was given a majority interest in the company because the idea was originally his, and because he was solely responsible for developing the web application and all technical processes. Schroeder was named president of Rendezvoo and was tasked with overseeing the day-to-day activities of the company, and performing all technical work in developing Rendezvoo's website. Under Rendezvoo's operating agreement, all members of the company owed each other fiduciary duties, and were expressly prohibited from unilaterally taking any corporate opportunities.

In 2006, the first version of Rendezvoo's web application, Rendezvoo.com, was released to the public. Schroeder had both originated the concepts underlying the website and developed all of its technical aspects. Shortly after the release, Schroeder and his friends decided to redesign the website to allow users to share not only their physical locations but also any interests they had. Rendezvoo's business plan described the website as a place "where people meet to share opinions, views, items and tastes on a variety of subjects—products, services, events, politics, economics—nearly anything of human interest."

Schroeder rebuilt the web application to reflect this expanded scope, and in August 2006, the new concepts were introduced in an "alpha release" to the website's existing user community. This second version of Rendezvoo.com included bulletin boards for users to post their interests, and also featured an infinite scroll to make it easier for users to browse large amounts of data.[1] By mid-2006, Schroeder had invested over 5,000 hours developing Rendezvoo's web applications, and delayed his legal career to focus solely on generating additional interest in the website.

---

1. Infinite scrolling allows users to peruse a website's content on a seemingly single long page, instead of having to open separate pages to retrieve additional content. According to the complaint, when the second version of Rendezvoo.com was released, the concept of infinite scrolling was in its infancy, and standard web technologies provided inefficient ways to browse large amounts of data.

Excited about their endeavor, Schroeder, Stroy and Bocra began to look for additional capital to further advance the Rendezvoo website. They were eventually introduced to Cohen, an investor affiliated with NY Angels, a not-for-profit corporation that provided capital to entrepreneurs starting new businesses.[2] In January 2007, the three men met with Cohen and shared with him Rendezvoo's concepts, business model and business plan; by this time, the Rendezvoo website had more than 5,000 users. Cohen told the men that although he was happy to meet with them again, he did not "get the concept" of people being interested in viewing other people's interests.

At a subsequent meeting later that month, Cohen and the three men discussed reformulating Rendezvoo.com to focus solely on new ideas, products and services. Schroeder and his friends agreed to narrow the website's scope, and Schroeder developed the Launchbed platform, a web application based on the original concepts of the second version of Rendezvoo.com. The initial branding statement described the new platform as a "user community where people and companies can launch new products, services, ideas, and media in order to ignite word-of-mouth efforts and receive targeted feedback." In March 2007, Schroeder provided the Launchbed business model to Cohen, who reacted positively to the new project.

In May 2007, Schroeder, Stroy and Bocra asked Cohen to become a partner in Rendezvoo. Under the proposal, Schroeder would reduce his ownership interest to 46% and Stroy, Bocra and Cohen would each own 18%. Despite lacking technical training and skills, Cohen accepted the offer and became Rendezvoo's Chairman and Chief Executive Officer. Cohen agreed to be bound by the restrictive covenants contained in Rendezvoo's operating agreement, including not taking Schroeder's ideas or using Rendezvoo's work product. Cohen's addition to Rendezvoo was never formally memorialized, and plaintiffs allege that the parties routinely ignored corporate formalities at Cohen's direction.[3]

At Cohen's urging, Schroeder, Stroy and Bocra took down the Rendezvoo.com website to concentrate on the more narrowly-

---

**2.** The complaint describes NY Angels as an independent consortium of "angel investors" in New York City that works with entrepreneurs. According to the complaint, at all material times, Cohen was an officer of NY Angels, and was acting in furtherance of NY Angel's business and within the scope of his authority as an officer.

**3.** Cohen also promised to contribute $20,000 to the project, yet never paid despite repeated calls to contribute.

focused Launchbed platform. They created a prototype for the new site, and rebranded it as Skoopwire.com, a direct-to-consumer news wire connecting businesses to bloggers, sophisticated consumers and journalists wanting easy access to information about new products and services before they were covered in the mainstream media. Thus, Skoopwire.com was a narrower version of Rendezvoo.com; whereas Rendezvoo.com users could post anything of interest to them, Skoopwire.com was focused solely on new product launches. Schroeder developed a technology plan for the Skoopwire website, which included information about the architecture and platform for the site, as well as customer data analysis. Schroeder shared that technology plan with Cohen, and also taught him about the social networking niche in which both the Rendezvoo and Skoopwire websites existed.

In June 2007, the four men formed Skoop Media, with Schroeder named as President, and Cohen serving as Chairman and Chief Executive Officer. Again, corporate formalities were ignored by the parties.[4] In July 2007, the Skoopwire website was "privately launched" for "testing, customer review and analysis" by "family members, friends and others," including focus groups. The information gathered was used to further develop and refine the website. The focus groups returned favorable results, and the parties planned to release the Skoopwire website to the general public.

Things, however, did not go as planned. Plaintiffs allege that Cohen was upset with what he perceived to be Stroy's lack of involvement in the project. Cohen believed that he should have a greater ownership interest in Skoop Media than his equal 18% share with Stroy, and was displeased with Schroeder's desire to protect Stroy's interest. Cohen balked at Schroeder's attempt to finalize a shareholder's agreement that included Stroy as an owner. The tension between Cohen and Schroeder grew greater, and Cohen continued to press for Stroy's ouster and a greater stake in Skoop Media.

According to the complaint, Cohen's actions caused significant strains among the four partners and effectively deadlocked the project. By early 2008, the parties began contemplating a liquidation of Skoop Media. Plaintiffs allege that in an effort to conceal his plan to steal Schroeder's ideas, technology and

---

4. Rendezvoo remained intact, and was never dissolved or merged into Skoop Media.

business plans, Cohen stated in an email that he was "saddened that such a marvelous idea and execution is lost forever." In fact, plaintiffs claim that Cohen purposely deadlocked the endeavor "so he could steal the core ideas for himself and freeze out Schroeder from reaping any benefits."

A proposed liquidation agreement circulated among the partners provided that each would not "develop, pursue, or otherwise work on . . . an entity or business reasonably related to the purposes, goals, aims and business models" of Rendezvoo or Skoop Media. Schroeder's requests to have the others sign the liquidation agreement went unanswered. Although the agreement was never executed, Cohen sent a July 1, 2008 email to Schroeder stating: "I have absolutely NO interest in PROFITING from your specific design work on Skoopwire." Plaintiffs allege that in mid-2008, Cohen "abandoned" Rendezvoo and Skoop Media. Although the Skoopwire website was never officially released to the general public, Skoop Media, like Rendezvoo, was never dissolved.

In 2009, Cohen met Pinterest founders Ben Silbermann and Evan Sharp at a business school competition at New York University. Silbermann and another Pinterest founder, Paul Sciarra, had previously formed Cold Brew Labs, Inc., a mobile shopping start-up, and were in the process of developing a mobile shopping application called Tote. Tote, however, was not successful, and by early 2010, Cold Brew Labs altered its plans and instead created Pinterest.com, a social commerce application where "curating and sharing collections of products" was made "dead simple." According to the complaint, this radical change in focus was the result of Cohen's stealing Schroeder's ideas and technology and giving that information to Pinterest's founders.

Pinterest.com was launched in March 2010. The website allows users to pull images from elsewhere on the Internet and generate pins which are compiled into various topic boards. Each pin also functions as a link to its original Internet source, such as a blog post, an article, or a shopping site where users can immediately purchase the item pictured. Users have the ability to view both the most popular pins on the site as well as the boards that other users have created. The website also allows users to "like" pins and "re-pin" items "creating a microcosm of image-sharing based solely on user-created content."

Upon seeing Pinterest.com, Schroeder noticed that it was nearly identical to the second version of his Rendezvoo website. Specifically, plaintiffs allege that key similarities include:

- the ability for users to "post their interests for their friends and the other users of the site to see";

- the ability to "connect things that mattered to a user with other users," and "provid[e] a place for a product or event promoter to gain visibility for its product";

- a primary business model of "product discovery through friends," whereby new product launches would be covered by users and shared with friends, "thereby igniting word of mouth about the product launch";

- an "infinite scroll" user interface technique;

- the use of a "board" as both the main user interface, and for each user's profile page; and

- a pink and purple color scheme "to attract female users."

According to the complaint, it was not until March 2012 that Schroeder became aware of Cohen's scheme to steal his ideas. At that time, Schroeder read an article wherein Cohen "bragged about being Pinterest's 'first investor,'" and described how he met Pinterest's founders in 2009, shortly after he allegedly deadlocked the Rendezvoo and Skoopwire projects. Plaintiffs allege that, in that article, Cohen falsely stated that he did not know where the concept of "pinning on Boards" came from, and claimed that the Pinterest website "came out of nowhere." The complaint further alleges that Pinterest's founders knew that the ideas given to them by Cohen were not his own.

In June 2013, after learning that Cohen played a material role in the early stages of the Pinterest website, plaintiffs commenced this action against Cohen, NY Angels (together, the Cohen defendants) and Pinterest. The complaint asserts causes of action for: (1) unjust enrichment (against all defendants); (2) misappropriation (against all defendants); (3) misappropriation of skills and expenditures (against all defendants); (4) promissory estoppel (against Cohen); (5) breach of fiduciary duty (against Cohen); and (6) aiding and abetting breach of fiduciary duty (against Pinterest). The complaint seeks, inter alia,

compensatory damages of more than one million dollars and a constructive trust over the earnings derived by defendants from Pinterest.

In September 2013, Pinterest and the Cohen defendants separately moved, pursuant to CPLR 3211, to dismiss the complaint. By order entered July 11, 2014, the motion court granted Pinterest's motion in its entirety and dismissed the complaint as against it. By order entered July 11, 2014, the motion court granted the motion of the Cohen defendants to the extent of dismissing the causes of action for breach of fiduciary duty, misappropriation and unjust enrichment. The court, however, denied dismissal of the causes of action for misappropriation of skills and expenditures, and promissory estoppel. Judgment was entered on July 29, 2014, and this appeal followed.

In the fifth cause of action, plaintiffs allege that Cohen breached his fiduciary duties. The parties agree that because the companies here are both Delaware entities, that state's law governs this claim. Under Delaware law, this cause of action requires proof of two elements: (1) the existence of a fiduciary duty; and (2) breach of that duty by the defendant (*Beard Research, Inc. v Kates*, 8 A3d 573, 601 [Del Ch 2010]). With respect to the first element, it is beyond dispute that an officer or director of a Delaware corporation owes fiduciary duties to both the company and its shareholders (*Agostino v Hicks*, 845 A2d 1110, 1122 n 54 [Del Ch 2004]). Likewise, unless the operating agreement provides otherwise, a manager of a Delaware LLC owes fiduciary duties to both the LLC and its members (*William Penn Partnership v Saliba*, 13 A3d 749, 756 [Del 2011]; *CMS Inv. Holdings, LLC v Castle*, 2015 WL 3894021, *18, 2015 Del Ch LEXIS 169, *64-65 [June 23, 2015, No. Civ-A-9468-VCP]).

As to the second element, fiduciaries may not use their positions of trust and confidence to further their private interests (*Carsanaro v Bloodhound Techs., Inc.*, 65 A3d 618, 637 [Del Ch 2013]). The core of the fiduciary duty is the notion of loyalty, and a fiduciary must always act in a good faith effort to advance the interests of those to whom the duty is owed (*U.S. West, Inc. v Time Warner Inc.*, 1996 WL 307445, *21, 1996 Del Ch LEXIS 55, *64-65 [June 6, 1996, No. Civ-A-14555]). A breach of the duty occurs when the fiduciary commits "an unfair, fraudulent, or wrongful act, including misappropriation of trade secrets, misuse of confidential information, . . . or

usurpation of the employer's business opportunity" (*Beard Research*, 8 A3d at 602).

■ Judged by these standards, we conclude that the lower court erred in dismissing the breach of fiduciary duty claim against Cohen. The complaint alleges that, as Chairman and Chief Executive Officer of both Rendezvoo and Skoop Media, Cohen owed fiduciary duties to both companies and to Schroeder, a fellow shareholder and member. Further, the complaint sets forth facts alleging that Cohen breached those duties by intentionally deadlocking the Rendezvoo and Skoopwire projects, stealing confidential and proprietary ideas, technology and business plans related to the projects, and providing that information to Pinterest. These allegations sufficiently state a cause of action for breach of fiduciary duty under Delaware law (*see Beard Research*, 8 A3d at 602).

Cohen argues that the fiduciary duty claim is not viable because he was no longer affiliated with Rendezvoo or Skoop Media in 2009, when he allegedly gave Pinterest the confidential information. To prevail on a breach of fiduciary duty claim, plaintiffs must show "an actual, existing fiduciary relationship between the plaintiff and the defendants at the time of the alleged breach" (*Omnicare, Inc. v NCS Healthcare, Inc.*, 809 A2d 1163, 1169 [Del Ch 2002], *appeal dismissed in part, revd in part* 818 A2d 914 [Del 2003]). Thus, for example, a director who has resigned or has been terminated no longer owes fiduciary duties to the company (*see Dionisi v DeCampli*, 1995 WL 398536, *8-10, 1995 Del Ch LEXIS 88, *21-28 [June 28, 1995, No. Civ-A-9425]; *In re Walt Disney Co. Derivative Litig.*, 907 A2d 693, 758 [Del Ch 2005], *affd* 906 A2d 27 [Del 2006]).

Viewed in the light most favorable to plaintiffs, and giving them the benefit of all reasonable inferences, the complaint sufficiently alleges that Cohen was still an officer of Rendezvoo and Skoop Media at the time of the alleged breach. The complaint specifically states that Cohen took on the positions of Chairman and Chief Executive Officer of both companies and held himself out to the public as such. There is no allegation in the complaint that Cohen ever resigned his positions, or relinquished his ownership interests in either entity. The complaint does not, as Cohen asserts, state that Rendezvoo and Skoop Media "ceased functioning." To the contrary, the complaint states that neither company was dissolved, and although the parties contemplated a dissolution of Skoop Media, a proposed liquidation agreement was never executed.

In seeking dismissal, Cohen relies on isolated language in the complaint stating that he "abandoned" Rendezvoo and Skoop Media in 2008, the year before the alleged breach, and that the others involved in the project "moved on" with their lives. At this early stage of the proceedings, we decline to ascribe the significance urged by Cohen to the word "abandoned." Plaintiffs' allegation that Cohen "abandoned" the companies does not lead to the inescapable inference that he resigned from or gave up his ownership interests in them. An equally plausible reading is that Cohen "abandoned" the companies by purposely causing a deadlock and withdrawing his support from the projects. Simply put, Cohen's status with the companies at the time of the alleged breach is a disputed issue of fact that cannot be resolved on this pleading motion (*see Dionisi*, 1995 WL 398536, *8, 1995 Del Ch LEXIS 88, *22 ["Determining whether a director or officer has resigned is a question of fact determined by the circumstances of each case"]).[5]

Even if Cohen prevails on his claim that he left the two companies prior to his allegedly providing the information to Pinterest, a breach of fiduciary duty claim could still lie under Delaware law. "A former director . . . breaches his fiduciary duty if he engages in transactions that had their inception *before* the termination of the fiduciary relationship or were founded on information acquired *during* the fiduciary relationship" (*BelCom, Inc. v Robb*, 1998 WL 229527, *3, 1998 Del Ch LEXIS 58, *9 [Apr. 28, 1998, No. Civ-A-14663]). Here, plaintiffs contend that Cohen's breach of fiduciary duties had its inception prior to his alleged abandonment of the companies. Specifically, the complaint states that Cohen intentionally caused the project to deadlock for the express purpose of stealing confidential information. According to the complaint, Cohen acquired this information while he was unquestionably a fiduciary, and subsequently gave it to Pinterest, a competitor, to advance his own interests. These allegations are sufficient to state a cause of action for breach of fiduciary duty under Delaware law (*see BelCom*, 1998 WL 229527, *3, 1998 Del Ch LEXIS 58, *8-9).

In the sixth cause of action, plaintiffs allege that Pinterest aided and abetted Cohen's breach of fiduciary duty. To prevail

---

**5.** Cohen cites to *Dionisi* for the proposition that even where there is no written resignation, fiduciary duties cease when a director "effectively" resigns. *Dionisi*, however, was a decision rendered after trial. Here, any questions as to whether Cohen "effectively" resigned cannot be resolved on this pre-answer dismissal motion.

on this claim, plaintiffs must allege: "(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach" (*Kaufman v Cohen*, 307 AD2d 113, 125 [1st Dept 2003]).[6] A defendant knowingly participates in the breach of fiduciary duty when he or she provides "substantial assistance" to the fiduciary, which occurs "when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur" (*id.* at 126).

An essential prerequisite to proving this cause of action is that the defendant must have known of the fiduciary duty (*see People v Coventry First LLC*, 13 NY3d 108, 115 [2009]). Indeed, actual knowledge of the breach of the duty is required, and constructive knowledge will not suffice (*Brasseur v Speranza*, 21 AD3d 297, 299 [1st Dept 2005]). Further, a plaintiff must plead this cause of action with particularity; conclusory allegations are insufficient (*see* CPLR 3016 [b]; *Front, Inc. v Khalil*, 103 AD3d 481, 483 [1st Dept 2013], *affd* 24 NY3d 713 [2015]; *Roni LLC v Arfa*, 72 AD3d 413, 413-414 [1st Dept 2010], *affd* 15 NY3d 826 [2010]).

■ Applying these principles, we conclude that the claim against Pinterest for aiding and abetting Cohen's breach of fiduciary duty was properly dismissed. Plaintiffs failed to assert with the requisite particularity facts alleging that Pinterest had actual knowledge of Cohen's alleged breach and knowingly participated in it. The complaint contains no specific allegation that Pinterest was actually aware of Cohen's involvement with Rendezvoo and Skoop Media, let alone that he was a fiduciary of the companies. That omission is fatal to this cause of action (*see Coventry First*, 13 NY3d at 115 [a claim that the defendants knowingly induced a breach of fiduciary obligations necessarily fails if defendants did not know of the duty]).

Plaintiffs rely on a number of statements in the complaint to support their argument that Pinterest had knowledge of Cohen's breach. For example, the complaint states that Pinter-

---

**6.** The parties rely on New York law to resolve the aiding and abetting cause of action. We need not decide whether New York or Delaware law governs this claim since the elements, as relevant to this case, are essentially the same under both states' laws (*compare Kaufman*, 307 AD2d at 125, *with In re Rural Metro Corp. Stockholders Litig.*, 88 A3d 54, 80 [Del Ch 2014], *appeal dismissed* 105 A3d 990 [Del 2014]).

est's founders did not come up with the idea behind the Pinterest website themselves, but received it from Cohen, knowing that the idea was not Cohen's own. The complaint further states that Cohen and Pinterest's founders agreed that Cohen would share the idea with them and provide capital. Neither of these allegations, however, fairly suggests that Pinterest's founders actually knew that Cohen was a fiduciary or that his passing along the idea breached a fiduciary obligation. In sum, the complaint's conclusory allegations are insufficient to sustain the aiding and abetting cause of action (*see Roni LLC v Arfa*, 72 AD3d at 413-414 [conclusory allegations in complaint do not give rise to an inference that the defendants had actual knowledge of the breach]; *Brasseur v Speranza*, 21 AD3d at 299 [bare allegations that the defendant knew or should have known of breach of fiduciary duty insufficient to sustain claim]; *Kaufman v Cohen*, 307 AD2d at 125-126 [absence of facts in complaint to infer that the defendants had actual knowledge of the fiduciary relationship]).[7]

█ The motion court properly dismissed the cause of action for unjust enrichment as against Pinterest.[8] To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered" (*Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516 [2012] [internal quotation marks omitted]). Further, "a plaintiff cannot succeed on an unjust enrichment claim unless it has a sufficiently close relationship with the other party" (*id.*). Although contractual privity is not required, there must be a relationship between the parties that is not " 'too attenuated' " (*id.*), and that "could have caused reliance or inducement" (*Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 182 [2011]).

7. Although we affirm dismissal of the aiding and abetting cause of action, we reject Pinterest's alternative argument that the complaint does not sufficiently allege that plaintiffs suffered damages proximately caused by the breach. In general, issues of proximate cause are for the trier of fact, and Pinterest's contention is unavailing at this procedural juncture (*see Overseas Shipholding Group, Inc. v Proskauer Rose, LLP*, 130 AD3d 415 [1st Dept 2015]). Both *Laub v Faessel* (297 AD2d 28 [1st Dept 2002]) and *R.M. Newell Co. v Rice* (236 AD2d 843 [4th Dept 1997], *lv denied* 90 NY2d 807 [1997]), upon which Pinterest relies, are distinguishable because they decided the proximate cause issue on summary judgment motions.

8. On appeal, plaintiffs do not challenge the court's dismissal of this cause of action as against the Cohen defendants.

Here, the complaint contains no facts showing that plaintiffs had any relationship or connection to Pinterest, let alone the "sufficiently close relationship" necessary to sustain this claim (*Georgia Malone*, 19 NY3d at 516, citing *Sperry v Crompton Corp.*, 8 NY3d 204 [2007]). Plaintiffs do not allege that Schroeder, or either of the corporate plaintiffs, had any contact with Pinterest or its founders (*see Boardman v Kennedy*, 105 AD3d 1375 [4th Dept 2013] [dismissing unjust enrichment claim where the plaintiff and the defendant had no dealings with each other]). The complaint alleges only a relationship between plaintiffs and Cohen, and a separate relationship between Cohen and Pinterest, which is "too attenuated" (*Georgia Malone*, 19 NY3d at 516), and insufficient to "have caused reliance or inducement" (*Mandarin Trading*, 16 NY3d at 182).

In the second cause of action, plaintiffs allege that Cohen and Pinterest misappropriated trade secrets related to the Rendezvoo and Skoopwire projects. To prevail on a claim for misappropriation of trade secrets, a plaintiff must demonstrate: "(1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means" (*North Atl. Instruments, Inc. v Haber*, 188 F3d 38, 43-44 [2d Cir 1999]). A trade secret is "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it" (*Ashland Mgt. v Janien*, 82 NY2d 395, 407 [1993], quoting Restatement of Torts § 757, comment *b*).

In determining whether information constitutes a trade secret,

> "several factors should be considered: (1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and [its] competitors; (5) the amount of effort or money expended by [the business] in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others" (*id.*).

The complaint, when read in the light most favorable to plaintiffs, states a claim for trade secret misappropriation

against Cohen. Plaintiffs allege that while Cohen was an officer of Rendezvoo and Skoop Media, he was exposed to the companies' confidential and proprietary technology and business plans. Plaintiffs further allege that despite being aware that the information was to be kept confidential, Cohen provided it to Pinterest. According to the complaint, Schroeder devoted nearly four years of his life, and thousands of hours, developing the technology that ultimately led to the Rendezvoo and Skoopwire websites. The complaint alleges that this technology was valuable to plaintiffs, and was not easily acquired or duplicated by others. Further, Schroeder took steps to maintain the secrecy of all of the technology and business information related to the projects.

These allegations are sufficient, for pleading purposes, to satisfy the first element of a misappropriation of trade secrets claim, namely, that plaintiffs possessed a trade secret (*see Ashland Mgt.*, 82 NY2d at 407 [whether information constitutes a trade secret is generally a question of fact]). Plaintiffs have also pleaded facts supporting the second element—that Cohen used the trade secrets in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means (*see North Atl. Instruments*, 188 F3d at 43-44). As noted earlier, plaintiffs allege that Cohen acquired the confidential information while he was a fiduciary of Rendezvoo and Skoop Media, and that he purposely caused the project to deadlock so that he could steal that information.

Plaintiffs, however, cannot prevail on their trade secret claim against Pinterest. The complaint does not allege that plaintiffs entered into any agreement with Pinterest or had any confidential relationship with the company or its founders. Indeed, as noted earlier, there is no allegation that Schroeder, or either of the corporate plaintiffs, had any contact whatsoever with Pinterest. Nor do plaintiffs allege that Pinterest obtained the trade secrets by improper means. In fact, the complaint states that Cohen voluntarily gave Pinterest the alleged trade secrets, not that Pinterest employed any improper means to acquire them. Plaintiffs point only to the allegation that Pinterest's founders knew that the idea given to them by Cohen was not Cohen's own. This allegation, however, does not give rise to an inference that Pinterest used improper means to obtain the information.

Although we uphold the misappropriation of trade secrets cause of action against Cohen, the claim should be limited to

the confidential information referenced in the complaint, and cannot extend to information in the public domain. "[A] trade secret must first of all be secret" (*Ashland Mgt.*, 82 NY2d at 407), i.e., "somethin[g] known to only one or a few and kept from the general public" (*Leo Silfen, Inc. v Cream*, 29 NY2d 387, 394 [1972]). Thus, information that is readily available from public sources is not entitled to trade secret protection (*JAD Corp. of Am. v Lewis*, 305 AD2d 545, 546 [2d Dept 2003]; *Newton Garment Carriers v Consolidated Carriers Corp.*, 250 AD2d 482, 482 [1st Dept 1998]).

Here, the complaint identifies a number of similar features in both Pinterest.com and the second version of Rendezvoo.com. As noted earlier, this version of the Rendezvoo website was introduced in August 2006, and had over 5,000 users by January 2007. The alleged misappropriation of trade secrets took place in 2009, several years after the Rendezvoo website entered the public domain. Thus, to the extent the features identified by plaintiffs were readily ascertainable from the publicly-available Rendezvoo website, they are not protectable trade secrets (*see Midsummer Fin. Prods., Inc. v Rapid Filing Servs. LLC*, 14 Misc 3d 1209[A], 2006 NY Slip Op 52463[U], \*2 [Sup Ct, NY County 2006] ["online content . . . and . . . website's 'general look and functionality' are not trade secrets because they are publicly exhibited on the website"]; *Plasmanet, Inc. v Apax Partners, Inc.*, 6 Misc 3d 1011[A], 2004 NY Slip Op 51769[U] [Sup Ct, NY County 2004] [information about the functionality and appearance of a website that was already in commercial operation was in the public domain, and thus, was not a trade secret]). On the other hand, trade secret protection can extend to plaintiffs' confidential technology, not readily ascertainable from the public Rendezvoo site, that led to the website's development.[9]

■ The complaint also states a claim against Cohen for misappropriation of ideas.[10] This cause of action requires proof of two elements: (1) a legal relationship between the parties in

---

**9.** We need not, at this stage of the proceedings, define the precise contours between features that are readily ascertainable from the Rendezvoo website and confidential technology that is not. Nevertheless, we note that some of the similarities between the Pinterest and Rendezvoo websites, such as the color scheme and use of an infinite scroll, appear to fall into the former category.

**10.** Although the misappropriation cause of action does not specifically allege idea misappropriation, a fair reading of the complaint's factual allegations sets forth this claim.

the form of a fiduciary relationship, an express contract, implied contract, or quasi contract; and (2) an idea that is novel and concrete (*Turner v Temptu Inc.*, 586 Fed Appx 718, 722 [2d Cir 2014]; *see Downey v General Foods Corp.*, 31 NY2d 56, 61-62 [1972]). Here, the complaint sufficiently alleges both a fiduciary relationship between Cohen and plaintiffs, and that the misappropriated ideas were novel. As with the trade secret claim, the idea misappropriation claim cannot extend to material in the public domain (*see Marraccini v Bertelsmann Music Group*, 221 AD2d 95, 98 [3d Dept 1996] [affirming dismissal of misappropriation claim where idea was a "creative variation" on an idea preexisting in the public domain], *lv denied* 89 NY2d 809 [1997]; *Oasis Music v 900 U. S. A.*, 161 Misc 2d 627, 631 [Sup Ct, NY County 1994] [idea that is merely "a variation on a basic theme" available in the public domain is not novel]).

With respect to Pinterest, the idea misappropriation claim was properly dismissed. Although plaintiffs concede that they have no contractual or fiduciary relationship with Pinterest, they nevertheless argue that a quasi-contractual relationship exists as evidenced by their unjust enrichment claim. However, as discussed previously, no unjust enrichment claim lies against Pinterest. In the absence of the requisite legal relationship between plaintiffs and Pinterest, the idea misappropriation claim fails (*see Hudson & Broad, Inc. v J.C. Penney Corp., Inc.*, 2013 WL 3203742, *7, 2013 US Dist LEXIS 89207, *20-22 [SD NY, June 18, 2013, No. 12 Civ 3239 (KBF)] [dismissing idea misappropriation claim because the plaintiff failed to plausibly plead a legal relationship between the parties], *affd* 553 Fed Appx 37 [2d Cir 2014]).

 The motion court correctly upheld the misappropriation of skills and expenditures claim against Cohen. To properly assert this claim, which is a subset of New York's unfair competition law, a plaintiff must allege that a defendant misappropriated plaintiff's labor, skills, expenditures or good will, and displayed some element of bad faith in doing so (*see Macy's Inc. v Martha Stewart Living Omnimedia, Inc.*, 127 AD3d 48, 57 [1st Dept 2015]; *Abe's Rooms, Inc. v Space Hunters, Inc.*, 38 AD3d 690, 692 [2d Dept 2007]). In this context, bad faith can be established by a showing of fraud, deception, or an abuse of a fiduciary or confidential relationship (*Big Vision Private, Ltd. v E.I. DuPont de Nemours & Co.*, 610 Fed Appx 69, 70 [2d Cir 2015]).

Plaintiffs adequately allege that Schroeder invested labor, skill and expenditures, having spent nearly four years of his

life, and thousands of working hours, on performing the technical requirements to develop the Rendezvoo and Skoopwire websites. Further, sufficient facts are alleged showing that Cohen misappropriated the fruits of Schroeder's investment by giving the ideas and technology to Pinterest in bad faith. As discussed previously, the complaint asserts that Cohen acquired the confidential information while he was a fiduciary of Rendezvoo and Skoop Media. The complaint also alleges that Cohen knew that the proprietary information he obtained should be kept confidential, and that Cohen agreed to be bound by the restrictive covenants in the Rendezvoo operating agreement, which included not taking Schroeder's ideas or using any of Rendezvoo's work product for his own benefit.[11]

The misappropriation of skills and expenditures claim was properly dismissed against Pinterest. Although plaintiffs argue that Pinterest exhibited bad faith by aiding and abetting Cohen's breach of fiduciary duty, we have already rejected that claim. Likewise, we have rejected the claim that bad faith is established merely because Pinterest may have known that the ideas given to them by Cohen were not his own. Because the complaint fails to sufficiently allege the existence of a fiduciary or confidential relationship, or that Pinterest otherwise obtained the information in bad faith, the misappropriation of skills and expenditures claim cannot stand.

The misappropriation causes of action are sufficiently stated against NY Angels under the theory of respondeat superior. "An employer may be vicariously liable for its employees' tortious acts on a theory of respondeat superior only if they were committed in furtherance of the employer's business and within the scope of employment" (*Bowman v State of New York*, 10 AD3d 315, 316 [1st Dept 2004]). The complaint alleges that Cohen was acting at all times in furtherance of NY Angels' business and within the scope of his authority as an NY Angels officer. At this pre-answer stage of the proceedings, these allegations are sufficient to state a claim against NY Angels under respondeat superior (*see Riviello v Waldron*, 47 NY2d 297, 303 [1979] ["because the determination of whether a particular act was within the scope of the servant's employment is so heavily dependent on factual considerations, the question is ordinarily one for the jury"]).

---

11. Like the other misappropriation causes of action, this claim cannot be premised upon misappropriation of publicly-available information (*see e.g. Demetriades v Kaufmann*, 698 F Supp 521, 526-527 [SD NY 1988]).

██ Finally, the motion court should have dismissed the promissory estoppel cause of action against Cohen. "The elements of a claim for promissory estoppel are: (1) a promise that is sufficiently clear and unambiguous; (2) reasonable reliance on the promise by a party; and (3) injury caused by the reliance" (*MatlinPatterson ATA Holdings LLC v Federal Express Corp.*, 87 AD3d 836, 841-842 [1st Dept 2011], *lv denied* 21 NY3d 853 [2013]). Detrimental reliance is an indispensable element of a promissory estoppel claim (*Thome v Alexander & Louisa Calder Found.*, 70 AD3d 88, 104-105 [1st Dept 2009], *lv denied* 15 NY3d 703 [2010]), and a failure to adequately plead that element requires dismissal (*see Rosenberg v Home Box Off., Inc.*, 33 AD3d 550, 550 [1st Dept 2006], *lv denied* 8 NY3d 804 [2007]).

Plaintiffs' promissory estoppel claim is based on the July 1, 2008 email from Cohen to Schroeder wherein Cohen stated that he had "absolutely NO interest in PROFITING from [Schroeder's] specific design work on Skoopwire." Even assuming that this statement constitutes a clear and unambiguous promise, the promissory estoppel claim fails because it does not sufficiently allege detrimental reliance. The complaint merely states, in conclusory fashion, that plaintiffs "reasonably relied on Cohen's promise," but does not explain how they purportedly relied. Indeed, there are no facts pleaded showing that plaintiffs did something, or refrained from doing something, in reliance on Cohen's email. Thus, the promissory estoppel claim should have been dismissed (*see Knight Sec. v Fiduciary Trust Co.*, 5 AD3d 172 [1st Dept 2004] [promissory estoppel claim dismissed where the complaint failed to allege that the plaintiff was injured by reason of its reliance on the promise]; *Tierney v Capricorn Invs.*, 189 AD2d 629, 632 [1st Dept 1993] [dismissing promissory estoppel claim where there were only conclusory allegations of reliance], *lv denied* 81 NY2d 710 [1993]).

Plaintiffs argue on appeal that they sufficiently alleged detrimental reliance because Schroeder "did not further implement his own ideas" as a result of Cohen's email. No such allegation is contained in the complaint. To the contrary, the complaint alleges that after the email was sent, Schroeder "continually contemplated how he could make use of his ideas and work product," a claim that is inconsistent with plaintiffs' current position that Schroeder held off pursuing his ideas in reliance on Cohen's email. Plaintiffs also contend, in their ap-

pellate brief, that they never would have granted Cohen access to their confidential information absent the promise contained in the July 1, 2008 email. Again, this allegation is found nowhere in the complaint. Nor does it make any sense since, according to the complaint, the confidential information was shared with Cohen long before he sent the email.

On appeal, plaintiffs maintain that the promissory estoppel claim is also based on assurances given by Cohen in the Rendezvoo operating agreement. However, the promissory estoppel claim set forth in the complaint is premised solely on the July 1, 2008 email, and makes no reference to the operating agreement. In any event, such a claim would fail because no facts are pleaded showing detrimental reliance on any covenants contained in the agreement. Further, a promissory estoppel claim is not viable where the conduct underlying the claim is governed by contract, and where the plaintiff fails to allege a duty independent of the contract (*see Coleman & Assoc. Enters., Inc. v Verizon Corporate Servs. Group, Inc.*, 125 AD3d 520, 521 [1st Dept 2015]).

We have considered the parties' remaining contentions, including plaintiffs' request on appeal for leave to amend their complaint, and find them unavailing.

Accordingly, the judgment of the Supreme Court, New York County (Melvin L. Schweitzer, J.), entered July 29, 2014, bringing up for review orders, same court and Justice, entered July 11, 2014, which, to the extent appealed from as limited by the briefs, granted defendant Pinterest's motion to dismiss the complaint as against it, and granted the Cohen defendants' motion to dismiss the complaint to the extent of dismissing the causes of action for misappropriation of trade secrets/ideas and breach of fiduciary duty, and denied the motion as to the causes of action for misappropriation of skills and expenditures, and promissory estoppel, should be modified, on the law, to grant the Cohen defendants' motion as to the promissory estoppel claim, to deny the Cohen defendants' motion as to the misappropriation of trade secrets/ideas and breach of fiduciary duty claims, to reinstate those claims, and otherwise affirmed, without costs. The appeals from the aforesaid orders should be dismissed, without costs, as subsumed in the appeals from the judgment.

FRIEDMAN, J.P., SAXE and MANZANET-DANIELS, JJ., concur.

Judgment, Supreme Court, New York County, entered July 29, 2014, bringing up for review orders, same court and Justice,

entered July 11, 2014, modified, on the law, to grant the Cohen defendants' motion as to the promissory estoppel claim, to deny the Cohen defendants' motion as to the misappropriation of trade secrets/ideas and breach of fiduciary duty claims, and otherwise affirmed, without costs. Appeals from the aforesaid orders, dismissed, without costs, as subsumed in the appeals from the judgment.