[44 NYS3d 2]

CIFG Assurance North America, Inc., Appellant, v J.P. Morgan Securities LLC, Formerly Known as "Bear Stearns & Co. Inc.," Respondent.

First Department, November 29, 2016

APPEARANCES OF COUNSEL

*Quinn Emanuel Urquhart & Sullivan, LLP*, New York City (*Sanford I. Weisburst, Richard I. Werder, Jr., Sean P. Baldwin* and *Ben Cornfeld* of counsel), for appellant.

*Simpson Thacher & Bartlett LLP*, New York City (*Bryce L. Friedman, Thomas C. Rice, Joshua M. Slocum* and *William T. Pilon* of counsel), for respondent.

## OPINION OF THE COURT

RICHTER, J.

In this action, plaintiff CIFG Assurance North America, Inc., a stock insurance company, alleges that Bear Stearns & Co. Inc., a predecessor of defendant J.P. Morgan Securities LLC, made material misrepresentations that induced CIFG to provide financial guaranty insurance in connection with two collateralized debt obligations (CDOs). According to CIFG, Bear Stearns had on its books a large number of high-risk residential mortgage-backed securities (RMBSs), and embarked on a scheme to rid itself of these toxic assets by off-loading them into the two CDOs, and marketing the CDOs' securities to investors.

The complaint alleges the following facts. In or about 2006, Bear Stearns created the two CDOs. In order to make the CDOs marketable, Bear Stearns needed to find an entity that would insure the CDOs' senior tranches. In August and November 2006, Bear Stearns approached CIFG to solicit financial guaranty insurance on two credit default swaps that would guarantee certain senior notes issued by the CDOs. To induce CIFG to issue the insurance, Bear Stearns repeatedly represented, both orally and in written pitchbooks and offering circulars, that the CDOs' assets would be selected by reputable collateral managers acting independently of Bear Stearns and in good faith in the interest of "long" investors. Based on these representations, CIFG agreed to issue the requested insurance, without which the CDOs would not have closed.

According to the complaint, Bear Stearns's representations were false because the collateral for the CDOs was not independently selected by the collateral managers. Instead, Bear Stearns persuaded the managers, through the promise of large fees and future business, to allow Bear Stearns itself to

choose the collateral. CIFG alleges that Bear Stearns loaded the CDOs with toxic RMBSs from its own books, and also profited from short positions it took against the CDOs' portfolios. Because of the large volume of toxic RMBSs in the portfolios, both CDOs collapsed within approximately one year after closing. As a result, CIFG had to pay over $100 million to discharge its liabilities under the insurance. CIFG alleges that had it known that the purportedly independent managers would be taking direction from Bear Stearns, it would never have issued the insurance.

The complaint asserts two causes of action: material misrepresentation in the inducement of an insurance contract (pursuant to Insurance Law § 3105), and fraud. Defendant moved to dismiss, arguing, among other things, that the misrepresentation claim fails to state a cause of action, is barred by the statute of limitations, and is not pleaded with the requisite specificity (CPLR 3016 [b]). In a decision entered June 26, 2015, the motion court dismissed the misrepresentation claim with prejudice for failure to state a cause of action, and dismissed the fraud claim with leave to replead (2015 NY Slip Op 32619[U] [Sup Ct, NY County 2015]). The court did not reach the statute of limitations issue. CIFG now appeals solely from the dismissal of the misrepresentation claim.

It is well settled that a misrepresentation claim must be pleaded with particularity (*see ESBE Holdings, Inc. v Vanquish Acquisition Partners, LLC*, 50 AD3d 397, 398 [1st Dept 2008]; CPLR 3016 [b] ["(w)here a cause of action . . . is based upon misrepresentation, . . . the circumstances constituting the wrong shall be stated in detail"]). CPLR 3016 (b) "imposes a more stringent standard of pleading" than otherwise applicable (*DDJ Mgt., LLC v Rhone Group L.L.C.*, 78 AD3d 442, 443 [1st Dept 2010]). The purpose of this strict pleading requirement is to clearly inform a defendant as to the complained-of incidents (*Pludeman v Northern Leasing Sys., Inc.*, 10 NY3d 486, 491 [2008]). Thus, "conclusory allegations are insufficient" (*Schroeder v Pinterest Inc.*, 133 AD3d 12, 25 [1st Dept 2015]).

██ Judged by these standards, the misrepresentation claim was properly dismissed. The complaint contains insufficient information about the insurance policies CIFG was allegedly fraudulently induced to issue, and the circumstances under which those policies were issued. As noted earlier, CIFG did not directly insure the CDOs, but rather, issued financial guaranty insurance on two separate credit default swaps that

would, in turn, guarantee certain notes issued by the CDOs. A credit default swap is a commonly used type of credit protection somewhat analogous to an insurance policy (*see generally HSH Nordbank AG v UBS AG*, 95 AD3d 185, 189-190 [1st Dept 2012]). There are two parties to a credit default swap: the buyer of the credit protection (analogous to the insured) and the seller of the credit protection (analogous to the insurer) (*id.* at 189). "[T]he 'protection buyer' pays a periodic fee (resembling an insurance premium) to the 'protection seller' to cover the credit risk on an underlying security or group of securities" (*id.*). If a "credit event" occurs, such as a payment default on the underlying financial product, the protection seller is obligated to compensate the protection buyer (*id.*).[1]

The complaint asserts only that CIFG issued financial guaranty insurance on two credit default swaps, but contains no other information about the policies. It does not describe the terms of the insurance, the amount of the insurance, the dates the insurance was issued, or the time period the policies covered. The complaint also fails to identify the parties to the insurance contracts and the names of the insureds and/or beneficiaries. Although the complaint alleges that Bear Stearns "solicited" the insurance from CIFG, it does not contain any detail as to how Bear Stearns made the solicitation. Nor does the complaint provide any information about the underlying credit default swaps. It does not identify either the protection buyer or the protection seller, fails to describe the terms of the swaps, and does not explain the circumstances underlying the decision to utilize credit default swaps, including whether or not Bear Stearns had any involvement in that decision. Finally, the complaint merely states that CIFG paid over $100 million to discharge its liabilities under the insurance, but does not identify to whom those payments were made, or the events that triggered the payments. In light of these deficiencies, CIFG's misrepresentation claim does not clearly inform defendant as to the complained-of incidents, and it was properly dismissed.

■ However, the claim should not have been dismissed with prejudice, but rather, CIFG should be given the opportunity to replead. A request for leave to amend a complaint should be

---

1. In general, the protection buyer has a "short" position, because it would be entitled to payment if the underlying financial product defaults. Concomitantly, the protection seller has a "long" position because it would not be required to pay where there is no default.

"freely given, and denied only if there is prejudice or surprise resulting directly from the delay, or if the proposed amendment is palpably improper or insufficient as a matter of law" (*McGhee v Odell*, 96 AD3d 449, 450 [1st Dept 2012] [internal quotation marks and citations omitted]). Further, "[a] party opposing leave to amend must overcome a heavy presumption of validity in favor of [permitting amendment]" (*id*. [internal quotation marks omitted]).

In its appellate briefs, CIFG sets forth the following additional facts that it would include in an amended complaint. The insurance provided by CIFG took a "transformer" structure under which CIFG issued an insurance policy directly to the senior noteholders. Under the credit default swaps, special purpose entities, known as "transformers," were obligated to pay the noteholders in the event the CDOs failed to make payments on the notes. In other words, the senior noteholders were the protection buyers of the credit default swaps, and the transformers were the protection sellers.[2] Instead of directly insuring the CDOs' obligation to pay the senior noteholders, CIFG insured the obligations of the transformers to make the payments to the noteholders under the terms of the credit default swaps.[3] CIFG further alleges that Bear Stearns specifically requested the transformer insurance structure used here.

Defendant contends that the complaint, even if amended to include these additional allegations, is insufficient to state a cause of action for material misrepresentation in the inducement of an insurance contract pursuant to Insurance Law § 3105. That statute provides that a material misrepresentation "shall avoid [a] contract of insurance" and "defeat recovery thereunder" (Insurance Law § 3105 [b] [1]). "A misrepresentation is a false representation," and "[a] representation is a statement as to past or present fact, made to the insurer by, or by the authority of, the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof" (Insurance Law § 3105 [a]). This section makes clear that the misrepresenta-

---

**2.** CIFG asserts that it will provide the names of the transformers and senior noteholders in an amended complaint.

**3.** According to the New York State Department of Financial Services, the Insurance Law, under certain conditions, "expressly permits [financial guaranty insurers such as CIFG] to issue insurance policies that guarantee payments by transformers or other parties pursuant to [a credit default swap]" (NY St Ins Dept 2008 Circular Letter No. 19 § IV B [Sept. 22, 2008]).

tion must be made by, or by the authority of, either the "prospective insured" or the "applicant for insurance."

It is defendant's position that CIFG's allegations do not establish that Bear Stearns was an "applicant for insurance" under Insurance Law § 3105.[4] "As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]). Because the term "applicant" is not defined in Insurance Law § 3105, "it should be construed in accordance with its common, everyday meaning" (*Matter of New York Skyline, Inc. v City of New York*, 94 AD3d 23, 27 [1st Dept 2012], *lv denied* 19 NY3d 809 [2012]). The term "applicant" is broadly defined as "[o]ne who requests something" (Black's Law Dictionary 115 [9th ed 2009]).

Here, CIFG alleges that: (i) Bear Stearns created the CDOs to transfer high risk assets from its own books to other investors; (ii) Bear Stearns knew that the market would require that the senior notes issued by the CDOs be insured; (iii) to ensure that marketability, Bear Stearns approached CIFG and asked it to issue financial guaranty insurance policies covering the CDOs' senior noteholders; (iv) Bear Stearns specifically requested the transformer insurance structure that CIFG used; and (v) to induce CIFG to issue the insurance, Bear Stearns made repeated written and oral false representations that the CDOs' portfolios would be selected by collateral managers independent from Bear Stearns. At this early stage of the proceedings, before an amended complaint has been served, we cannot conclude, as a matter of law, that these allegations are palpably insufficient to show that Bear Stearns was an "applicant," within the meaning of Insurance Law § 3105 and the ordinary understanding of that term, for the insurance CIFG issued.[5]

Defendant suggests that in order to be an "applicant," there must be a written application for insurance. However, Insur-

---

4. The parties agree that Bear Stearns is not the "prospective insured."

5. The fact that CIFG insured the obligations of the transformers in the credit default swaps, instead of the obligations of the CDOs themselves, does not change the analysis. Simply because the insurance product issued took this particular form does not make Bear Stearns any less an "applicant" for purposes of Insurance Law § 3105, particularly in light of the allegation that Bear Stearns specifically asked CIFG to utilize the transformer structure.

ance Law § 3105 contains no requirement that the misrepresentation be contained in a formal application.[6] Nor is there any evidence in the record that a written application was required in order to obtain the insurance provided by CIFG. In any event, CIFG alleges that the misrepresentations were contained, inter alia, in various offering documents, and that Bear Stearns specifically requested the precise type of insurance CIFG issued. To accept defendant's myopic reading of the term "applicant" would render an insurance misrepresentation claim meaningless, because it would leave CIFG without a remedy against the very entity that is alleged to have made the misrepresentations that induced CIFG to issue the insurance.

We reject defendant's alternative claim that the misrepresentation cause of action is time-barred. The statute of limitations for misrepresentation is six years, rendering the claim timely (*see* CPLR 213 [1]; *Santiago v 1370 Broadway Assoc.*, 96 NY2d 765, 766 [2001]; *Bokara Rug Co., Inc. v Kapoor*, 93 AD3d 583, 584 [1st Dept 2012]; *Catanzano v Warren Rosen & Co.*, 19 AD3d 250, 250 [1st Dept 2005] [Insurance Law § 2123 misrepresentation claim governed by six-year statute of limitations]). Although *Colon v Banco Popular N. Am.* (59 AD3d 300, 300-301 [1st Dept 2009]) applied a three-year statute of limitations to a misrepresentation cause of action, that case recognized that if a misrepresentation claim alleges fraud, as CIFG's claim here does, a six-year period applies (*id.* at 301; *see CIFG Assur. N. Am., Inc. v Credit Suisse Sec. [USA] LLC*, 128 AD3d 607, 608 [1st Dept 2015], *lv denied* 27 NY3d 906 [2016] [applying six-year limitations period to Insurance Law § 3105 claim sounding in fraud]).

There is no merit to defendant's argument that CIFG's Insurance Law § 3105 claim is time-barred under CPLR 214 (2), which imposes a three-year statute of limitations for "action[s] to recover upon a liability . . . created or imposed by statute." CPLR 214 (2) applies "only where liability would not exist but for a statute," and "does not apply to liabilities existing at common law which have been recognized or implemented by statute" (*Gaidon v Guardian Life Ins. Co. of Am.*, 96 NY2d 201, 208 [2001] [internal quotation marks omitted]). Insurance Law

---

6. We note that the portion of the trial court's decision in *MBIA Ins. Corp. v J.P.Morgan Sec. LLC* (45 Misc 3d 1202[A], 2014 NY Slip Op 51424[U] [Sup Ct, Westchester County, Sept. 18, 2014]) relied upon by defendant was reversed on appeal (144 AD3d 635 [2d Dept 2016]).

§ 3105 does not, by its terms, create a cause of action, but merely codifies common-law principles (*see* Kaplan & Gross, Commentaries on the Revised Insurance Law of New York § 149 at 338 [1940] ["(predecessor statute to section 3105) restates generally, . . . in codified form, common law principles long established in the field of insurance"]). Thus, CPLR 214 (2) does not bar the misrepresentation claim.

Accordingly, the order of the Supreme Court, New York County (Marcy S. Friedman, J.), entered June 26, 2015, which, to the extent appealed from as limited by the briefs, granted defendant's motion to dismiss the claim for material misrepresentation in the inducement of an insurance contract (pursuant to Insurance Law § 3105) with prejudice, should be modified, on the law and in the exercise of discretion, to grant plaintiff leave to replead, and otherwise affirmed, without costs.

Tom, J.P., Mazzarelli, Manzanet-Daniels and Webber, JJ. concur.

Order, Supreme Court, New York County, entered June 26, 2015, modified, on the law and in the exercise of discretion, to grant plaintiff leave to replead, and otherwise affirmed, without costs.